**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

VALERIE OBENAUF,

      Plaintiff,

      v.                                                             Case No.  13-C-355

CAROLYN W COLVIN,
**Acting Commissioner of the**
**Social Security Administration**

      Defendant.

# DECISION AND ORDER

This matter is before the Court on Plaintiff Valerie Obenauf's ("Obenauf") request for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c) of the adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income ("SSI").

Also before the Court is Obenauf's motion to amend her complaint to reflect that the only time frame at issue is between her alleged onset date of September 18, 2008, and March 19, 2012, the day before the date of the allowance of her subsequent applications for benefits. (ECF No. 16.) Obenauf also filed a proposed amended Complaint. (ECF No. 16-1.) The time for the Commissioner to file a response has ended and none was filed.

Having reviewed the motion and the proposed amended Complaint, the Court finds that justice requires the proposed amendment be allowed, *see* Fed. R. Civ. P. 15(a)(2). Therefore, the motion is granted. The Court now addresses the issues raised by Obenauf's action for judicial review.

**Background**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that physical and/or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment that exists in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner has established a five-step sequential analysis. *See* 20 C.F.R. § 404.1520.[1] The Commissioner's evaluation requires consideration of the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals

---

[1] The Court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to disability insurance benefits. For SSI benefits, materially identical provisions appear in Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., and at 20 C.F.R. § 416.901 et seq.

an impairment listed by the Commissioner, *see* 20 C.F.R. § 404, Subpart P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy. *See Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience and functional capacity. 20 C.F.R. § 404.1560(c)(2).

Obenauf filed applications for disability insurance benefits and SSI on August 25, 2010, alleging a disability onset date of September 18, 2008. (Tr. 128.) Obenauf's applications were denied initially and upon reconsideration.

At Obenauf's request, an administrative hearing was held on December 11, 2011, with administrative law judge ("ALJ") Arthur J. Schneider presiding. Obenauf, represented by counsel, appeared and testified. At the ALJ's request, vocational expert Allen Noll also appeared and testified. By a January 10, 2012, decision the ALJ denied Obenauf's claims. (Tr. 140.)

The ALJ found that Obenauf had not engaged in substantial gainful activity since May 29, 2010, and she had severe impairments of morbid obesity, diabetes mellitus, chronic kidney disease, and multiple arthralgias affecting the back, knees, hip, hands, and feet. Although Obenauf also claimed to have additional severe

impairments including hypertension, cellulitis, left ganglion cyst, carpal tunnel syndrome, diabetic retinopathy, and vision problems, the ALJ determined that those impairments, and her medically determinable impairment of a dysthymic disorder, did not cause more than minimal work-related limitations. The ALJ also determined that Obenauf does not have an impairment or combination of impairments that meets or medically equals an impairment listed by the Commissioner.

The ALJ further found that Obenauf was unable to perform her past relevant work as a cleaner/housekeeper and a delicatessen cutter/slicer. However, using the Medical-Vocational Guidelines, 20 C.F.R. § Part 404, Subpart P, App. 2, as a framework for decision-making, together with the vocational expert's testimony, the ALJ found that despite the reduction in Obenauf's ability to perform all or substantially all the requirements of sedentary work, there are a significant number of unskilled sedentary jobs in the national economy that a person of Obenauf's age, education, work experience and residual functional capacity ("RFC") could perform.

Obenauf requested review of the ALJ's decision by the Appeals Council. That request was denied on January 30, 2013 (Tr. 1-4), leaving the ALJ's decision as the final decision of the Commissioner. Obenauf filed her Complaint in this Court on March 28, 2013. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

**Analysis**

Obenauf raises six primary issues before this Court. The first of the issues is

that the ALJ improperly evaluated her mental impairment, a dysthymic disorder (a form of depression with milder symptoms than a major depressive disorder), *see Spiva v. Astrue,* 628 F.3d 346, 348 (7th Cir. 2010), in concluding that it did not constitute a severe impairment and caused no more than minimal work related limitations.

"A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.'" *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1520(c)) (alteration in original). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs," including: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). Mental impairments are evaluated by a special technique set forth in 20 C.F.R. § 404.1520a. The ALJ used that evaluation process and discussed the relevant factors set out in the regulation.

A decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support his conclusions adequately remand is appropriate. *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). The Court's review is limited to the reasons articulated by the ALJ in the written decision. *Id.* A treating physician's opinion that is consistent with the record is generally entitled to "controlling weight."

20 C.F.R. § 404.1527(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection. 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. *Jelinek,* 662 F.3d at 811.

The ALJ found that Obenauf's medically determinable impairment of a dysthymic disorder did not cause more than a minimal limitation in her abilities to perform basic mental activities and, therefore, was non-severe. Noting that Obenauf underwent a psychological evaluation in August 2011, the ALJ considered the symptoms she reported at that time, including sadness, crying spells, suicidal ideation, sleep disturbance, social withdrawal, and the dysthymia diagnosis by treating psychologist Daniel M. Christy ("Christy"), Ph.D. The ALJ summarized some of Christy's findings from Obenauf's four subsequent appointments noting that her mental status examinations remained "generally unremarkable." (Tr. 132). The ALJ also indicated that at her most recent appointment on October 5, 2011, Obenauf had reported feeling much better overall and noted decreased depressive symptoms.

The ALJ created a seemingly accurate, but selective, summary of Christy's findings. Christy's October 5, 2011 note included the following: "One of the primary topics . . . was how sadness seems to have been internalized by every member of the

family. . . . It is difficult to connect [Obenauf] with her sadness. She is so well defended and keeps her affect pretty flat, so her progress is slow and incremental." (Tr. 879-80.) Christy found:

> **some incremental improvement in the level of psychomotor activity and animation.** She was clinically alert, attentive, responsive, oriented in all spheres. Speech was clear, coherent, goal directed with no apparent anomolies. **Mood was sad. Affect was considerably flattened and constricted. Problem solving skills are minimal but showing slight improvement. Judgment and insight is fair to poor.** Eye contact and social relatedness was adequate.

(Tr. 880.) (Emphasis added.) While the ALJ need not mention every piece of evidence, he omitted discussion of favorable evidence regarding the extent of Obenauf's mental impairment. An ALJ is not permitted to "cherry-pick" from those mixed results to support a denial of benefits. *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ's lopsided review of the evidence is more problematic when considered with the context provided by the medical evidence of record, also not discussed by the ALJ. That evidence reflects that mental impairment was not a new factor in Obenauf's medical history. In a May 22, 2009, diabetes residual functional capacity questionnaire, Obenauf's long-time treating physician, Dr. Nestor Alabarca ("Alabarca"), reported that situational depression due to the loss of her job affected Obenauf's physical condition. (Tr. 558.) Nearly a year later, on April 7, 2010, Dr. Thomas Fugette ("Fugette"), Ph.D., conducted a psychological evaluation of Obenauf

- 7 -

and diagnosed depression (Tr. 488), noting that Obenauf had experienced depression since the January 2006 death of her father. He also reported that Obenauf's responses to the Self-Rating Depression Scale were consistent with moderate depression. Fugette found that limitations imposed by Obenauf's depressive disorder, DSM-IV Code 311, were secondary to her multiple physical conditions.

On September 7, 2010, Obenauf sent an email to Sue Ellen Rich ("Rich"), R.N., a diabetes nurse educator, stating that she was wasting Rich's time, that her life was not running right and that she has been a "huge problem financially, mentally, physically . . . for almost 2 years now. . . [and] that today is not a particularly good day, just feel like crying mostly." (Tr. 639.)

An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ stated that he gave some weight to the February 18, 2011, opinion of the state agency psychological consultant, Joan Kojis ("Kojis"), Ph. D, (Tr. 796-809), who found that Obenauf had no medically determinable mental impairment and whose sole comment was Obenauf "notes feeling down . . . due to her limited mobility. She did email her diabetes RN and expressed feeling down over her

and diagnosed depression (Tr. 488), noting that Obenauf had experienced depression since the January 2006 death of her father. He also reported that Obenauf's responses to the Self-Rating Depression Scale were consistent with moderate depression. Fugette found that limitations imposed by Obenauf's depressive disorder, DSM-IV Code 311, were secondary to her multiple physical conditions.

On September 7, 2010, Obenauf sent an email to Sue Ellen Rich ("Rich"), R.N., a diabetes nurse educator, stating that she was wasting Rich's time, that her life was not running right and that she has been a "huge problem financially, mentally, physically . . . for almost 2 years now. . . [and] that today is not a particularly good day, just feel like crying mostly." (Tr. 639.)

An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ stated that he gave some weight to the February 18, 2011, opinion of the state agency psychological consultant, Joan Kojis ("Kojis"), Ph. D, (Tr. 796-809), who found that Obenauf had no medically determinable mental impairment and whose sole comment was Obenauf "notes feeling down . . . due to her limited mobility. She did email her diabetes RN and expressed feeling down over her

treatment regime **but she has no [diagnosis].**" (Tr. 808) (Emphasis added). In reaching that conclusion, Kojis apparently overlooked Fugette's April 2010, depression diagnosis. Thus, Kojis's opinion does not provide substantial evidence for the ALJ's assessment of Obenauf's mental impairment.

The ALJ also stated that he gave little weight to the more recent opinion of Christy, who reported Obenauf's global assessment of functioning ("GAF") score was 50 to 58, indicative of moderate to severe symptoms or moderate to severe impairment of occupational or social functioning.[2] The ALJ supported his decision to give minimal weight to Christy's opinion by citing Christy's brief treating relationship with Obenauf and the fact that Christy's conclusions were not consistent with the ALJ's assessment of Obenauf's functional abilities.

Review of the ALJ's functional assessment discloses that it, like the his discussion of Christy's report, is highly selective. For example, citing exhibit 12E dated October 10, 2010, (Tr. 437-445), the ALJ stated that with respect to Obenauf's daily activities she had been able to live independently, attend to personal care tasks, prepare meals, manage her finances, drive a vehicle and shop, and that her reported limitations were attributed to her physical health conditions.

Obenauf lives with her three adult brothers, and they do the household chores,

---

[2]A GAF between 51 and 60 reflects "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders,* Text Revision (DSM–IV–TR) 34 (4th ed. 2000).

including the dusting, vacuuming, and cleaning of the home. (Tr. 153-54, 160.) In exhibit 12E Obenauf reported difficulties with personal care (Tr. 438), including pain when bending to put clothes on, and limitations reaching which affect her ability to bathe, use the toilet, and brush her hair. For meals, she usually prepares sandwiches, microwave meals, and canned soup that take five to ten minutes, and she "used to actually cook – not just eat ready to eat foods." (Tr. 439.) She does laundry but needs help carrying it to the washing machine. With the exception of checking her email on the computer, Obenauf spends most of her day watching television. (Tr. 437.)

She goes out two or three times a week, and shops for groceries once a week which takes about an hour. (Tr. 440.) She does not do any yard work due to back and shoulder pain, and the amount of walking involved. (Tr. 440.) Obenauf also reported that she does not handle stress well and is a lot more emotional than she used to be. She also reported "[m]y lack of mobility makes life a daily struggle. I feel like my days are just passing by, and I am out of control. I have so much trouble sleeping, I feel tired and defeated many days. I wish I knew what to do." (Tr. 444.)

At the December 13, 2011, administrative hearing, Obenauf testified that she drove very little, she is lucky if she drives once a week, and driving within a 15-mile radius of her home "might be [her] maximum." (Tr. 157.) Due to her poor vision, she does not drive at night or when it is raining. (Tr. 162-63.) Obenauf also testified that she went grocery shopping once a month. (Tr. 160.) The ALJ's decision

suggests normalcy in Obenauf's daily activities that is not consistent with the very information he cited.

Furthermore, he did not explain satisfactorily in the written decision his rejection of Christy's opinion, and the reasons he provided lack the support of substantial evidence. The ALJ did not adequately articulate his consideration of all the evidence regarding Obenauf's alleged mental impairment when weighing the opinion of treating psychologist Christy versus that of non-treating psychologist Kojis and assessing the impact, if any, on Obenauf's activities. Reasons offered in the Commissioner's brief, but not discussed by the ALJ, cannot serve as a basis for upholding the ALJ's decision. *See Jelinek,* 662 F.3d at 812. Therefore, the action must be remanded pursuant to sentence four for further proceedings. To provide guidance on remand, the Court will briefly comment on the other five issues raised by Obenauf.

*Other Issues*

Obenauf asserts that the ALJ improperly analyzed her morbid obesity under § 1.02 of the Listing of Impairments because the obesity resulted in her not being able to ambulate properly and that obesity substituted for the major joint dysfunction from which a claimant must suffer in order to meet that particular Listing. In her reply brief, Obenauf contends that the Commissioner did not respond and, therefore, has waived the issue.

The Commissioner adequately responded to the issue, *see* Def.'s Mem., 15

(ECF No. 14), and the ALJ found that Obenauf was morbidly obese; specifically addressing her obesity with respect to § 1.02(A) and (B) as well as Social Security Ruling 02-1p. The Listing issue Obenauf raises is not a basis for remand. *See Sienkiewicz v. Barnhart,* 409 F.3d 798, 802 (7th Cir. 2005).

Obenauf also contends that the ALJ (1) impermissibly cited only some portions of treating physician Alabarca's June 2010 report, failing to mention the additional limitations that Obenauf could only occasionally reach with her right arm, could not reach with the left, and could not use her right fingers due to pain; (2) did not discuss the need for vocational training (Tr. 490-91); and (3) did not adequately discuss his reason for rejecting Alabarca's September 2011 report that Obenauf would need to elevate her legs half the work day if she had a sedentary job. (Tr. 876.) The need for vocational training is not a factor that the ALJ need address, and the ALJ adequately addressed Obenauf's need to elevate her legs. However, on remand the ALJ must articulate his consideration of the cited limitations on Obenauf's use of her arms for reaching and the inability to use her right fingers.

Obenauf contends that when the ALJ assessed her credibility he failed to discuss her activities of daily living, improperly found that she was non-compliant with treatment, improperly relied on her work history, mischaracterized her treatment history, and improperly determined her RFC before he determined her credibility. The Court concludes that due to the foregoing flaws, the ALJ must reassess Obenauf's credibility on remand in compliance with the case law of this circuit.

Obenauf also contends that the ALJ failed to explain how she could perform the jobs he identified when evidence indicated that she did not possess the requisite skills. This issue will not be addressed because the ALJ will need to revisit the steps of the sequential analysis properly assessing Christy's opinion, Obenauf's mental impairment, and the reaching/fingering limitations of treating physician Alabarca's June 2010 report.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Obenauf's motion to amend the Complaint (ECF No. 16) **is GRANTED;**

The Clerk of Court is **DIRECTED** to file Obenauf's amended Complaint (ECF No. 16-1.);

Obenauf's action for judicial review is **GRANTED** to the extent that the ALJ's decision is **REVERSED** and this matter is remanded for further proceedings not inconsistent with this Decision and Order. This is a sentence four reversal and remand.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2014.

          **BY THE COURT:**

          *Rudolph T. Randa*
          **HON. RUDOLPH T. RANDA**
          **U.S. District Judge**